*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-AA-734

PROVIDENCE HOSPITAL, *et al.*, PETITIONERS,

v.

DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT.

and

BONNIE POZNANSKI, INTERVENOR.

07/06/2017

FILED
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Petition for Review of a Decision of the
Compensation and Review Board of the District of Columbia
Department of Employment Services
(CRB-819-15)

(Submitted May 3, 2016                    Decided July 6, 2017)

*Todd S. Sapiro* was on the brief for petitioners.

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were on the statement in lieu of brief for respondent.

*David M. Snyder* was on the brief for intervenor.

Before BECKWITH, *Associate Judge*, and WASHINGTON[*] and NEBEKER, *Senior Judges*.

NEBEKER, *Senior Judge*:  Due to the concurrent nature of her employment, intervenor-claimant, Bonnie Poznanski, was awarded temporary total and temporary partial injury benefits for a work related injury sustained on April 3, 2013.  At the time of injury, intervenor was employed full-time by petitioner, Providence Hospital, and part-time by Baltimore Washington Medical Center ("BWMC").  Intervenor's injury occurred at work for petitioner during an argument with a colleague.  During the argument, the colleague pushed intervenor and aggravated her pre-existing left-shoulder condition.  Petitioner challenges whether the Compensation Review Board's ("CRB") decision was based upon substantial evidence and in accordance with the law.  Specifically, petitioner challenges whether the intervenor can be awarded both temporary total and temporary partial benefits for the same injury, and whether intervenor voluntarily limited her income.  We affirm.

---

[*]  Judge Washington was Chief Judge at the time of argument. His status changed to Senior Judge on March 20, 2017.

**I.**

Before the April 3, 2013, injury, intervenor suffered a left shoulder work injury on December 6, 2011. After this time, intervenor's work was modified insofar as she needed assistance with lifting, pushing, and pulling patients. Both employers accommodated these restrictions.[1]

After the April 3, 2013, injury, however, BWMC was no longer able to accommodate intervenor's work restrictions. Indeed, intervenor's doctor, Dr. David Johnson, restricted her from all work at BWMC because he was concerned overusing the shoulder would cause further damage.

On June 27, 2013, intervenor returned to modified work for petitioner. Then, on July 16, 2013, intervenor was lifting a patient with her right arm when something "snapped" in her right shoulder. While doing physical therapy for her

---

[1] BWMC may not have formally accommodated intervenor's restrictions; all we know is intervenor's co-workers "helped [her]." The status of the accommodation does not affect this court's disposition.

right shoulder, intervenor's left shoulder worsened.[2] Intervenor was released to return to modified duty with petitioner sometime before August, 31, 2013. As of that date, however, petitioner could no longer accommodate intervenor and did not allow her to return to work.

Petitioner had intervenor evaluated by Dr. John O'Donnell for the purpose of an independent medical evaluation. Dr. O'Donnell found intervenor's left shoulder condition to be the result of a pre-existing condition and the April 3, 2013, injury.

## II.

This court has created a burden-shifting frame work to determine whether a claimant shall be awarded disability benefits. *Logan v. District of Columbia Dep't of Emp't Servs.*, 805 A.2d 237 (D.C. 2002). First, a claimant must demonstrate inability to perform his or her usual job. *Id*. at 243. If the claimant demonstrates inability, the burden shifts to the employer to establish the availability of other similar jobs which the claimant could perform. *Id*. Where the employer meets its

---

[2] It appears from the record that intervenor may have initially hurt her right shoulder during physical therapy ordered for her injury to that shoulder. Likewise, her left shoulder worsened during physical therapy for her right shoulder.

burden, the claimant has the opportunity to rebut by challenging the legitimacy of the employer's evidence, or the claimant can demonstrate diligence, but lack of success, in obtaining employment. *Id.*

After the CRB has reviewed the ALJ's award decision, parties may petition this court for review. This court reviews decisions of the CRB, not decisions of the ALJ. *Reyes v. District of Columbia Dep't of Emp't Servs.*, 48 A.3d 159, 164 (D.C. 2012). While the CRB's legal decisions are reviewed *de novo*, *Howard Univ. Hosp. v. District of Columbia Dep't of Emp't Servs.*, 690 A.2d 603, 606 (D.C. 2008), review of its factual findings are governed by the substantial evidence test, *Ferreira v. District of Columbia Dep't of Emp't Servs.*, 667 A.2d 310, 312 (D.C. 1995) ("*Ferreira II*"). The substantial evidence test is deferential as it only requires this court to search for such evidence that a reasonable mind might accept to support a conclusion. *Stewart v. District of Columbia Dep't of Emp't Servs.*, 606 A.2d 1350, 1351 (D.C. 1992).

Two areas deserve attention. First, whether a decision is based on substantial evidence. To make this determination, a court should focus on (1) whether the agency has made a finding of fact on each contested, material issue of fact; (2) whether substantial evidence of record supports each finding; and (3)

whether conclusions legally sufficient to support the decision flow rationally from the findings. *Ferreira II*, 667 A.2d at 312. Second, whether the employer has demonstrated the availability of work that the injured employee has voluntarily forgone. *Logan*, 805 A.2d at 243; *see also Washington Post v. District of Columbia Dep't of Emp't Servs*., 675 A.2d 37, 41 & n.4 (D.C. 1996) (employer must prove work is in fact available); *Joyner v. District of Columbia Dep't of Emp't Servs*., 502 A.2d 1027, 1031 n.4 (D.C. 1986). *Joyner* states:

> Job availability should incorporate the answer to two questions. (1) Considering claimant's age, background, etc., what can the claimant physically and mentally do following his injury, that is, what types of jobs is he capable of performing or capable of being trained to do? (2) Within this category of jobs that the claimant is reasonably capable of performing, are there jobs reasonably available in the community for which the claimant is able to compete and which he could realistically and likely secure? This second question in effect requires a determination of whether there exists a reasonable likelihood, given the claimant's age, education, and vocational background that he would be hired if he diligently sought the job.

*Id*. Further, if the employer meets its burden, "the claimant may refute . . . by challenging the legitimacy of the employer's evidence of available employment or by demonstrating diligence, but a lack of success, in obtaining other employment."

*Logan*, 805 A.2d at 243. If, however, the claimant fails, he is still entitled to a "finding of partial disability." *Id.*

The court now turns to whether the CRB's decision was based on substantial evidence and whether that decision flows logically from the findings. First, the CRB did not err in finding that the July 2013 accident did not sever petitioner's liability nor was further consideration required. While it may be true that this court has remanded in other instances where the CRB or ALJ did not evaluate a subsequent accident pursuant to D.C. Code § 32-1508 (6)(A), this claim does not present reversible error. Petitioner disagrees and cites *Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Emp't Servs*., 704 A.2d 295 (D.C. 1997), for the proposition that a subsequent injury to a pre-existing condition will always be looked to as the sole cause of the subsequent disability.

Petitioner, however, is only partially correct. A close reading of that decision reveals this court's focus was § 32-1508 (6)(B)—the "special fund" provision. This court held that when an employee with a pre-existing condition is subsequently injured, the employer shall only be liable for the amount of disability attributable to that subsequent injury provided the employer knew of the pre-existing condition prior to the subsequent injury. *Washington Metro. Area Transit*

*Auth*., 704 A.2d at 297-99. Stated differently, if the employer knew of the pre-existing condition before the subsequent work-related accident, the employer is only liable for the increase to that disability; inversely, if the pre-existing condition was unknown to the employer at the time of the subsequent injury, the employer is liable as if the subsequent injury created the entire disability anew. *Id.* In *Georgetown Univ*., this court elaborated that an employer is liable for a subsequent injury to a previous disability if that disability is now "*substantially greater.*" *Georgetown Univ. v. District of Columbia Dep't of Emp't Servs*., 830 A.2d 865, 873 (D.C. 2003) (citing *Washington Metro. Area Transit Auth*., 704 A.2d at 297-99) (emphasis added).

Petitioner, however, goes astray in its application of that holding to the facts of this case. Here, in terms of the July 2013 injury, the pre-existing disability, the April 2013 injury, is work related, and the subsequent injury did not increase intervenor's disability. To be sure, intervenor's doctor ordered the same work restrictions be put in place for both the April and July 2013 injuries.[3] Only after

---

[3] Similarly, petitioner misplaces its reliance on *Harris v. District of Columbia Dep't of Emp't Servs*., 746 A.2d 297 (D.C. 2000). That case was concerned with a subsequent injury that caused a pre-existing disability to be elevated to permanent status. *Id.* at 301-02. Here, the disability was not increased nor is this a claim for a permanent disability award. *Clark*, likewise, is inapplicable. In *Clark*, this court remanded because the examiner determined

(continued…)

intervenor tried to return to modified work from the July 2013 injury did petitioner tell intervenor it could not accommodate her.  Accordingly, the disability was not increased by the July 2013 injury for compensation award purposes; thus, the failure to focus on the July 2013 injury to determine the award was harmless[4] and the award granted logically flows from substantial evidence.

Next, petitioner challenges whether one injury can sustain an award of both temporary total and temporary partial benefits.  We note petitioner has failed to cite any authority that bars a claimant from receiving differing temporary disability awards as a result of the same injury due to concurrent employment; the court,

---

(…continued)
claimant's disability was not causally related to work, but failed to consider whether that pre-existing, non-work related disability could have been aggravated by claimant's work responsibilities, which could result in an award for benefits. *Clark v. District of Columbia Dep't of Emp't Servs*., 772 A.2d 198 (D.C. 2001). Here, remand is not necessary because the record demonstrates that intervenor's disability was not aggravated for purposes of determining a disability award. Further, as petitioner points out, if "a work-related injury when combined with a previous disability . . . causes *substantially greater disability*, . . . the liability of the employer shall be as if the subsequent injury alone caused the subsequent amount of disability."  (citing *Georgetown*, 830 A.2d 865) (emphasis added). Here, the July 2013 injury has not caused a substantially greater disability. Therefore, it is immaterial.  Thus, *Harris*, *Clark*, and *Georgetown* are inapposite.

[4] In any event, intervenor has established the nature and extent of her injury by substantial evidence, and the petitioner is liable for the injuries regardless of the date of injury.

likewise, has not found such. In its absence, this court reaches the same logical conclusion the CRB made: a claimant can receive differing temporary awards attributable to one work related injury because of concurrent employment. A legal paradox is not created by this decision. It is permissible to have two separate awards attributable to one injury because there are two separate jobs—and earnings—being affected by one injury. One injury can impact a person's concurrent earnings differently because of differing job responsibilities—the examples are infinite.

Moreover, receiving two differing awards is possible under existing precedent. A claimant who has two jobs could receive two differing temporary awards by failing to refute an employer's showing that the claimant has voluntarily limited his or her income as to one wage source but not the other. *See Logan*, 805 A.2d at 243 ("the claimant may refute . . . by challenging the legitimacy of the employer's evidence of available employment or by demonstrating diligence, but a lack of success, in obtaining other employment," but if the claimant fails, he or she is still entitled to a "finding of partial disability"). For example, it may be the case, as it is here, that a claimant has two different jobs that have two different schedules and requirements. It would then be possible for an employer to put on evidence that one of those two jobs is available but the other is not, leading to a temporary

total award for the unavailable job and a temporary partial award for the other if the claimant failed to refute the employer's evidence. While that did not occur here, it demonstrates that a single injury can lead to two differing temporary awards because a claimant had two jobs.

Finally, petitioner has failed to meet its burden in establishing intervenor voluntarily limited her income. As mentioned above, petitioner must establish job availability in fact, which means the petitioner must prove that there are jobs reasonably available in the community for which the intervenor is able to compete and which she could realistically and likely secure. *Washington Post*, 675 A.2d 37, 41 & n.4; *Joyner*, 502 A.2d 1027, 1031 n.4. All petitioner has done is argue that Dr. Johnson's concern that overuse will cause more damage is obviated because intervenor no longer has a full-time job that will cause her to overuse her shoulder. Like the CRB, we recognize the logical appeal of this argument, but similarly reject it. This argument does not establish that there is in fact an available job for intervenor to work. At best, it establishes that intervenor has the *ability* to work an available job.[5] Moreover, the ALJ credited intervenor's testimony, which included

---

[5] Ability may require a claimant to search, but it is the employer's burden to first prove that there is in fact a job available. Lack of diligence is an element of the claimant's rebuttal, *Logan*, 805 A.2d at 243, but rebuttal is only necessary after the employer has established job availability in fact.

statements that BWMC did not have any type of work that she was able to do. Simply, petitioner did not meet its burden to establish there were any available jobs.

Therefore, we affirm the CRB and ALJ as the decision to award a differing temporary award for the wages lost at BWMC was supported by substantial evidence.

*So ordered.*